# CHARLESTON.

STATE *v.* A. I. AMEY *et als.*

Submitted October 18, 1921. Decided November 29, 1921.

ACTIONS—*Suit by State to Sell for Benefit of School Fund Land Purchased at Delinquent Tax Sale Properly Dismissed when Party Assessed with Land Had Conveyed Same away Prior to Assessment and Transfer Had Been Made on Land Books.*

A suit brought by the State under the provisions of chapter 105 of the Code to sell, for the benefit of the school fund, a tract of land purchased by the State at a sale made by the sheriff for taxes delinquent thereon, is properly dismissed when it appears that the party in whose name the said land

was assessed with the taxes for which the delinquent sale was made had, before such assessment, conveyed away the whole of said land to other parties, to whom it was regularly transferred upon the land books.

(LIVELY, JUDGE, absent.)

Appeal from Circuit Court, Nicholas County.

Suit by the State against A. I. Amey and others. Decree for plaintiff, and defendant, O. C. Lewis, appeals.

*Affirmed.*

W. C. *Reddy,* G. G. *Duff* and W. E. R. *Byrne,* for appellant.

*Alderson & Breckenridge,* for appellees.

RITZ, PRESIDENT:

This is a suit instituted by the State of West Virginia to subject to sale, for the benefit of the school fund, certain tracts or parcels of land which it is alleged in the bill were sold by the sheriff of Nicholas county for the taxes delinquent thereon, purchased by the State, and not redeemed within the time provided by law.

Only one of these tracts is involved upon this appeal, and it is a tract alleged to contain 92.3 acres situate on Little Creek, in Hamilton District, in said county. The allegation of the bill is that this tract was returned delinquent for the taxes assessed against the same in the name of Charlotte Shaver, the former owner, for the year 1909, and sold by the sheriff in December, 1911, to satisfy said delinquency, at which sale the State became the purchaser; that the same was not redeemed within the time provided by law, and is now subject to be sold for the benefit of the school fund. The appellant O. C. Lewis filed his petition asking to redeem this tract of land. He averred that the same is a part of an 825-acre tract patented to A. H. McCoy in 1842; that out of this 825-acre tract the said McCoy, on the 29th of March, 1856, conveyed a boundary of 600 acres to Wm. H. McCoy; that on the 12th of November, 1866, the said Wm. H. McCoy reconveyed said tract of 600 acres to the said A. H. McCoy; that prior to making said last mentioned conveyance

89 W. Va.

said Wm. H. McCoy had sold the said tract of 600 acres—
300 acres thereof to Mariah Shaver, wife of James B. Shaver,
and the remaining 300 acres to James E. Shaver, and that in
accordance with said sales said A. H. McCoy conveyed 300
acres of said tract to the said Mariah Shaver, and the other
300 acres thereof to James E. Shaver; that the said Mariah
Shaver entered into the possession of said 300-acre tract so
conveyed to her and lived thereon, and cleared and culti-
vated a part thereof; that on the 8th of September, 1884,
said Mariah Shaver conveyed the said 300-acre tract to Char-
lotte Shaver, wife of her son, John A. Shaver; that the said
Charlotte Shaver, on the 24th of March, 1891, conveyed 100
acres of said 300-acre tract to L. W. Herold by metes and
bounds; that in December, 1905, a survey was made of the
residue of said tract of land, and it was found to contain
276.9 acres, which was assessed to the said Charlotte Shaver
for the years 1906 and 1907; that on the 22nd of March,
1906, said Charlotte Shaver conveyed to the Elkins Lumber
Company a tract supposed to contain 184.6 acres, which
left a residue of 92.3 acres which was charged to the said
Charlotte Shaver upon the land books of said county for
the years 1908 and 1909, and returned delinquent for the
nonpayment of taxes charged against the same for the year
1909, and at a sale thereof for such delinquency purchased
by the State as aforesaid; that the said Charlotte Shaver,
having departed this life, the petitioner O. C. Lewis, on the
9th of August, 1915, procured a deed from her husband and
heirs-at-law conveying to him the said 92.3 acres of land;
that on the 1st of April, 1912, petitioner also secured a deed
from Wm. H. McCoy, sole devisee of Andrew H. McCoy,
conveying any interest he might have in the tract of 600 acres
of land.

Edith S. Ahbe, and others, filed a petition and answer in
said cause alleging that the tract of 92.3 acres as claimed by
the petitioner Lewis forms an interlock with the lands owned
by them; that the said Charlotte Shaver in her lifetime con-
veyed away to L. W. Herold and the Elkins Lumber Com-
pany all of the lands owned by her, for which reason there
was no land properly assessed to her for the year 1909, and

the sale and purchase by the State was ineffective to pass any title; that the said petitioner O. C. Lewis has located the said 92.3 acres so as to form an interlock with their land; and that even if such location is correct, and the said Shaver sale was effective to pass title to the State, the same was transferred to them under the provisions of the Constitution of this State.

Much evidence was taken in this case presenting the various phases of it. It is unnecessary, however, for its correct determination to consider very much thereof. It will be borne in mind that this proceeding is to subject to sale a tract of 92.3 acres, to which the State alleges it procured the title by virtue of a return of the same delinquent for nonpayment of taxes thereon by Charlotte Shaver, and a sale thereof and purchase by it for such delinquency. The 300-acre tract of land acquired by Mariah Shaver is described in the deed to her by metes and bounds, and in her deed to Charlotte Shaver simply by reference to the former deed. The 100 acres conveyed away by Charlotte Shaver to L. W. Herold, above referred to, is also described by metes and bounds, as is also the tract conveyed by her to the Elkins Lumber Company. Both of these conveyances were prior to the year 1909, for which the tract of 92.3 acres was returned delinquent. The testimony of surveyors is taken which shows that the two tracts of land conveyed away by Charlotte Shaver—the 100 acres to L. W. Herold, and the tract to the Elkins Lumber Company—cover exactly the same land which was conveyed to Mariah Shaver by A. H. McCoy, and by Mariah Shaver to the said Charlotte Shaver, so that upon the execution and delivery of these deeds no part of the 300 acres remained to the said Charlotte Shaver. Not only does the testimony of the surveyors show clearly that these two deeds cover the same land conveyed to Charlotte Shaver, and all of it, but a comparison of the descriptions in the two deeds with the description in the original deed makes this fact perfectly manifest to anyone. Now the petitioner O. C. Lewis locates the boundary of this 300 acres on the side where it abuts upon the Ahbe land so as to make an interlock with the Ahbe land, while the Ahbes make this

line of the 300 acres correspond with their line. The decree
of the lower court simply dismissed the bill as to this tract
of land, and the petitioner O. C. Lewis contends that it
should have decided where the true line is, and have found
that it makes an interlock with the lands of the Ahbes, and
that he was entitled to redeem the land lying within that
interlock as the vendee of the heirs of Charlotte Shaver.
This contention loses sight of the fact that the bill is based
upon the State acquiring title to the land through Char-
lotte Shaver. It cannot be very material where the line sep-
arating the Ahbe lands from the Shaver lands is, for Char-
lotte Shaver owned none of these lands at the time of the
assessment under which the delinquent sale was made. If
the exterior boundary lines of the 300 acres are as contended
for by the petitioner Lewis, the deeds from Charlotte Shaver
to Herold and the Elkins Lumber Company conveyed the
same according to those metes and bounds; and, likewise,
if the location of this line is as contended for by the Ahbes,
then the said deeds from the said Charlotte Shaver divested
her of all of her interest therein. If the description con-
tained in the deed conveying the land to her is sufficient to
include the land contended for by the petitioner O. C. Lewis,
then the very same description in effect in a deed by which
she conveys the land must be held to be effective to divest
her of that title, so that the State of West Virginia, by virtue
of the sheriff's sale for delinquent taxes acquired no interest
in any tract of land for the very good reason that Charlotte
Shaver, at the time of the assessment, was vested with no
title or interest in any part of the 300-acre tract, it appear-
ing that she had conveyed the whole thereof away, and that
the same had been charged to her vendees upon the land
books.

The appellant Lewis contends that by reason of his deed
from Wm. H. McCoy, sole devisee of Andrew H. McCoy, he
acquired some interest in the 600-acre tract. It is a little
hard for us to conceive how this deed was effective to convey
anything to him. The allegations of his own petition show
that McCoy had theretofore conveyed 300 acres of this 600
acres to Mariah Shaver, and 300 acres to J. E. Shaver, and

the averment of his petition is that these two tracts include all of the 600 acres. But even if there was some part of the 600 acres not included in the two deeds aforesaid, this is not a proceeding against the same, and it is not perceived how Lewis could obtain any relief herein as to any of such lands. If there exists such lands, and the same are forfeited, the State may proceed against the same, and when that is done Lewis may come in and claim the right to redeem under his deed. He cannot do so in this case, however, for the very good reason that there is no proceeding here to sell any lands forfeited in the name of McCoy.

Upon finding that the State acquired no title to the 92.3 acres, or any part thereof under the tax sale, the court below properly dismissed the bill without undertaking to determine the correct location of the line between the Shaver land and the Ahbe land. The State of West Virginia, under the facts existing here, has no interest in that question.

We find no error in the decree of the circuit court complained of, and affirm the same.

*Affirmed.*